In the Matter of MAX BROWN, an Attorney, Respondent.

First Department, June 15, 1917.

**Attorney at law disbarred — gross unprofessional conduct — making false affidavit — refusing to pay over money due to receiver and converting same — making false statement of fact to receiver — violation of written stipulation.**

Attorney at law disbarred for gross professional misconduct which consisted, *first*, in making a false affidavit with intent to deceive the court; *second*, by improper collection of rents due to a receiver, by refusing and neglecting to pay the same over on demand and by converting a large part thereof to his own use; *third*, in making a false statement in his letter to the receiver that the court had made him a certain allowance; and *fourth*, for violating a written stipulation not to take an appeal.

The possessory lien of an attorney at law assumed the *res* to be in his possession. The existence of such lien does not entitle the lienor to use the property subject thereto, and if an attorney uses money in his possession, on which he claims a lien, he is guilty of a conversion.

A stipulation not to take an appeal is binding.

DISCIPLINARY PROCEEDINGS instituted by the County Lawyers Association.

*Mason Trowbridge* [*George R. Adams* of counsel], for the petitioner.

*Max Brown* [*Elias Rosenthal* of counsel], respondent in person.

CLARKE, P. J.:

The respondent was admitted to the bar in May, 1898. The original petition contained three specifications of misconduct, which were referred by this court to one of the official referees to take and state the evidence in respect thereto

with his opinion thereon. Thereafter the official referee filed his report, with his opinion that the charges should be dismissed, omitting, however, a statement of the evidence upon which such opinion was based. Concurrent with a motion by the respondent for an order confirming the report, the petitioner moved for an order recommitting· all the papers and proceedings to the official referee and directing him to file a further report in accordance with the order of reference. The petitioner subsequently moved to amend the petition by the addition of four specifications and that the same be referred to the official referee. The court denied the respondent's motion to confirm the report of the official referee, and granted the motion of the petitioner to recommit the proceeding to take the testimony in regard to the additional charges and to report the same, together with the evidence as to the original charges, with his opinion thereof. After the close of the evidence taken on the additional charges, both the petitioner and respondent, at the suggestion of the official referee, submitted proposed reports embodying statements of the evidence and their respective conclusions thereon.· The official referee has adopted as his report to this court the proposed report submitted by the respondent, which finds both the original and additional charges not sustained, and recommends that the same be dismissed.

We shall consider in this opinion only the additional charges.

The fourth specification charges that the respondent, on or about November 16, 1915, knowingly made and submitted to a justice of the Supreme Court a certain false affidavit upon a motion to set aside a judgment theretofore rendered in the said court, for the purpose of deceiving the said justice and of obtaining an order to show cause why the said motion should not be granted. The portion of the affidavit to which the charge is directed is as follows: " The matter came on before Peter B. Olney, Esq., Referee named by the plaintiff's attorney, and after the defendant had testified, and defendant's witness, Charles Veschler, had testified and who said he had examined the books and found irregularities and a difference of about $7,000, and also pointed out the losses and the double charges made to defendant; then the case was adjourned for the purpose of producing another witness,

to wit, the bookkeeper, for the purpose of identifying the entries made in the books, and in the meantime vacation came on, and the matter was adjourned by all parties including the referee."

The judgment sought to be vacated was rendered in the matter of *Blitzer* v. *Veschler,* an action in the Supreme Court to recover the balance alleged to be due upon an accounting after the dissolution of a copartnership. The defense was fraud and an incorrect statement of the account by reason of certain entries in the copartnership books. The matter was referred to Referee Peter B. Olney, before whom the issues were tried, resulting in a judgment in favor of the plaintiff. A transcript of the testimony of the defendant's witness Veschler before the referee discloses that he did not testify to the facts stated in the respondent's affidavit. The respondent concedes that Veschler did not so *testify*. He claims, however, that Veschler stated the facts in question to the referee in a *private conversation,* and that this is the effect of the statement in the affidavit, properly construed. I find nothing in the language of the affidavit justifying the strained construction asserted by the respondent. The language is susceptible of but one reasonable construction, namely, that Veschler testified on the hearing that he had examined the books and found irregularities and a difference of about $7,000, pointing out losses and double charges made to the defendant. If the respondent had wished to indicate otherwise, it would have been an easy matter to have so expressed himself in unmistakable terms.

Assuming, however, that the language is susceptible of the construction advanced by the respondent, the preponderance of the evidence establishes that no such conversation as is alleged between the witness Veschler and the referee ever took place. In respect to this alleged conversation, the respondent testified that after objection had been raised to the admission of the book entries on the ground that they had not been properly identified, the referee left his seat and went over to the witness Veschler, stating to the witness that he wanted to know for his own information about the amount of the discrepancies claimed by the defendant, and asking that such discrepancies be pointed out to him on the

books; that the witness stated that the difference was about $7,000, and pointed out several items in the books. The respondent was corroborated by the witness Veschler and by one Lewittes, who occupied desk room in the respondent's office, both of whom testified, in addition, that the referee suggested that the litigants meet at the office of the plaintiffs' attorneys to discuss their differences.

For the petitioner, Parkus, the stenographer in attendance at the hearing, testified that the stenographic minutes contained a complete and accurate record of all the testimony adduced at the hearing in question, and that his best recollection was that no such conversation was had " off record." Referee Olney testified that the case was somewhat fixed in his memory by reason of two certain incidents which occurred, and that to his best recollection he had no conversation with the witness Veschler not reported in the record; nor had he any recollection of leaving his seat and asking the witness to point out discrepancies in the books. Both Henry H. Bowman and Harold H. Bowman, of the firm of Smith & Bowman, the plaintiff's attorneys, testified positively that no such conversation occurred. The former further testified that after the hearing was adjourned he suggested a meeting at his office to enable the defendant to point out any *bona fide* errors found in the books, and such meeting was arranged, the referee taking no part in the conversation.

The learned official referee, in adopting the proposed report submitted by the respondent, has found not only that the petitioner's complaint under this specification was based upon a misconstruction of the statement contained in respondent's affidavit, but that the statement, as made, was true. As heretofore indicated, we dissent from both conclusions and are of the opinion that the charge is sustained in either aspect.

Specifications numbered " fifth," " sixth " and " seventh " relate to the conduct of the respondent in the action of *Jacobson* v. *Jacobson,* an action for a separation, in which the respondent appeared as substituted attorney for the plaintiff, Anna Jacobson, and in proceedings incidental thereto. A final decree in that action was entered on January 6, 1914, granting the plaintiff alimony at the rate of $15 per week

from December 24, 1913. Upon the motion of the respondent, one Rosenberg was appointed receiver, with the usual powers, in sequestration proceedings thereafter begun in the action. Pursuant thereto, Rosenberg as receiver commenced an action against the defendants Jacobson and Wittal to set aside a conveyance of certain real estate at 75 Stanton street, on the ground of fraud, and certain proceedings against certain tenants of the premises in question, the respondent acting as attorney for the receiver. The petition charges that in June and July, 1914, the respondent, as attorney for the receiver, collected the sum of $880 in rentals from certain tenants of the premises, and unlawfully refused to pay over the same or the balance adjudged to be due to the receiver, and withheld and converted the said moneys until adjudged in contempt and ordered to be imprisoned until he paid the sum of $1,031.16.

It is not disputed that the respondent or his agents collected $880 from certain tenants of the premises while summary proceedings were pending against them in the Municipal Court. The receiver testified that he was first informed of these collections early in June, 1914, when the respondent stated to him that he had collected rents from several tenants and would send the money to him as soon as he (respondent) put the checks through the bank. Upon the failure of the respondent to pay over the moneys after subsequent demand, the receiver made a motion in the Supreme Court for a substitution of attorneys.

The papers in that motion were entitled in the case of *Jacobson* v. *Jacobson*. The motion was referred to Henry A. Forster, to determine what amount, if any, was due the respondent for his services and disbursements on behalf of the receiver, and upon what terms a substitution should be ordered. The respondent had theretofore been authorized by order of the court to retain as compensation the sum of $200 and disbursements amounting to $23.19. The referee reported that the substitution of attorneys should be ordered without any terms and that the respondent should be denied any further compensation as attorney for the receiver. The report of the referee was confirmed on November 13, 1914, one Gordon being substituted as attorney for the receiver,

and the respondent was directed to turn over to the receiver or his attorney all moneys, papers or property of any kind belonging to the receiver. The respondent's appeal to this court from that order was dismissed.

The respondent refused to comply with the order of substitution, and the receiver thereafter moved to punish him for contempt for failure to pay over the said moneys. The motion was denied because the order of substitution failed to fix the amount of money in the respondent's possession belonging to the receiver, the court stating in an opinion that "the order of substitution adjudicates finally that the respondent has no lien, and any claim that he now makes for compensation out of the funds in his hands is utterly without merit." The receiver thereupon moved again for an order directing the respondent to turn over all moneys in his possession, and it appearing that the amount thereof was in dispute, the order directing such payment referred the matter to a referee to take proof of such amount and report with his opinion to the court. The referee thus appointed found that the respondent, while acting as attorney for the receiver, personally collected an aggregate sum of $880 from four tenants of the premises at 75 Stanton street as rent for the months of June and July, 1914, and that out of this sum he was entitled to deduct $223.19 for his compensation and disbursements, the remaining $656.81 being due from him to the receiver. The report of the referee was confirmed by an order of the court on June 17, 1915, which order was affirmed on appeal to this court (*Jacobson* v. *Jacobson*, 170 App. Div. 966). An appeal taken to the Court of Appeals was dismissed. (216 N. Y. 707.)

On December 31, 1915, the respondent was adjudged in contempt of court for his failure to pay the receiver the sum of $1,031.16, the order decreeing that he be fined in that sum and imprisoned until the same be paid. The respondent, on January 10, 1916, paid to the sheriff of this county the sum of $1,086.62.

The respondent seeks to justify the withholding of the moneys collected upon two grounds. He claims that $322.50 was deposited with him by three tenants, with the consent of the receiver, under the following trust agreement:

"We, the undersigned, do hereby deposit with Mr. Max Brown, as trustee, to keep for us, the sums set opposite our names, to be kept by him until the final determination of an order to compel Ignatz Jacobson, defendant in the action of Rosenberg against Jacobson, pending in the Supreme Court, New York county, to turn over the sum of $1,115, which includes the rental collected from the undersigned for the months of May and June, 1914, for the premises Nos. 75 & 77 Stanton Street, Borough of Manhattan, City of New York; and that in the event the said moneys are paid over by said Ignatz Jacobson to the receiver, that we, the undersigned, are to receive credit for the same for the last month if the receiver will collect the necessary arrears, at which time said money should be turned over to the receiver, or if the undersigned will pay for said months then said money to be returned to the undersigned.

"It is hereby expressly understood that the money deposited with Mr. Brown was not deposited with him as attorney for the receiver but as trustee for the undersigned.

"HARRY PELCYGER.............          $187 50
                        .............          70 00
                        .............          65 00"

The respondent testified that the above agreement was drawn in the presence of the attorney for the tenant, Pelcyger, who advised the tenant to sign it, and that other tenants deposited $65 and $70 respectively, under the same agreement. Neither the attorney nor the other tenants referred to were called as witnesses for the respondent, nor was their absence explained. Pelcyger himself testified that he gave the respondent certain checks "for the receiver, for rent." Rosenberg, the receiver, testified that he never authorized the respondent to collect the rents in question, and that when he first learned of such collections, about June 9 or 10, 1914, the respondent stated that he would turn over the money to him as soon as the checks were put through the bank, which he failed to do. While he denied any knowledge of the alleged trust agreement, he stated in an affidavit verified July 7, 1914, as follows: "Deponent has not collected one cent rent for the months of May and June from the tenants because the tenants

are poor people, small business people, and they say they could not afford to pay again; that only three tenants have deposited one month's rent to be kept in abeyance to await the outcome of this motion as it appears by their affidavits hereto annexed."

The respondent further claims to have been justified in withholding the moneys in question by reason of his alleged possessory lien, which he claims he would have lost by parting with the money. He contends, in this connection, that there has been no adjudication on the question of the lien, and that the order, though entitled in the action of *Jacobson* v. *Jacobson,* in fact related to the action of *Rosenberg* v. *Jacobson and Wittal.*

The respondent offered in evidence a written agreement alleged to have been entered into between himself and the plaintiff in the action, Anna Jacobson, by which he was retained by her to bring an action in the City Court of the city of New York against the defendant Ignatz Jacobson to recover the sum of $1,800 due the plaintiff for arrears in alimony. The respondent's compensation, as provided in the agreement, was to be " one-third of any sum which may be recovered either by suit or settlement, and in addition thereto the costs which may be awarded by the court." This retainer, in terms, refers to an action in the City Court, and not to the sequestration proceedings in which the respondent acted as attorney for the receiver. The petitioner contends that it is, in any event, illegal and unenforcible. In *Mooney* v. *Mooney* (29 Misc. Rep. 707) Mr. Justice SCOTT said: " Indeed, so far as concerns his claim for services in enforcing the payment of alimony, the law does not permit an attorney's lien to attach to the alimony paid to the wife under a decree. It is intended for the support of the party to whom it is awarded, its amount is fixed with reference to her necessities, and the courts will not countenance its appropriation to any other purpose." (See, also, *Matter of Bolles,* 78 App. Div. 180; *Van Vleck* v. *Van Vleck,* 21 id. 272; *Matter of Brackett,* 114 id. 257.) The respondent seeks to distinguish the instant case on the ground that he was a substituted attorney in the action. The distinction is urged without authority or reason in its support and is untenable.

Nor is there any merit in the respondent's contention that the substitution of attorneys for the receiver was ordered in the action of *Rosenberg* v. *Jacobson and Wittal*, and not in *Jacobson* v. *Jacobson*. While the decree awarding alimony to the plaintiff in the latter action was entered on June 6, 1914, the sequestration proceedings thereafter instituted were in continuation of that action, and the order of substitution was, therefore, properly entitled.

Assuming, however, that the respondent's claims as to both the trust agreement and lien are tenable, his own testimony establishes a conversion of a large part of the moneys collected. Of these sums, checks aggregating $640 were deposited in the account of " Max Brown, Attorney," in the National Park Bank of New York, and a check for $60 was deposited in the State Bank. A transcript of the account in the National Park Bank shows that on April 26, 1915, there was a balance of only $3.51 to the credit of the account in that bank, and a like balance on January 1, 1916. The respondent testified that this was his daughter's account, in which he sometimes deposited his own moneys and moneys received on collections for clients. He admitted personally using the moneys involved in the present proceeding, testifying: " I was justified. It was with the consent of the receiver. His own testimony shows he said he will wait until I collect the checks from my bank. And it was given to me by orders of the court besides. * * * That was given to me also under the contract which is in evidence." The respondent's attempted justification does not, however, justify. A possessory lien assumes the *res* to be in the possession of the person asserting the same. The existence of such a lien does not entitle the lienor to use the property subject thereto. In doing so the respondent was guilty of a conversion of the moneys collected by him.

The sixth specification of misconduct charges that the respondent in August, 1914, wrote the receiver a letter in which he falsely stated that by order of the court an allowance had been made to him (respondent) of the sum of $1,000 for his services as attorney for the receiver. The letter reads as follows:

" Please take notice that pursuant to the order a certified

copy of which is served upon you herewith, you are required to pay me as follows:

. " Counsel fee allowed by Court, $1,000, to be paid in the following manner:

| | |
|---|---:|
| " As per order of July 21, 1914............... | $200 00 |
| " As per order of August 24, 1914............ | 200 00 |
| " Payment made by order of May 14, 1914..... | 50 00 |
| " From the rent of September, 1914.......... | 250 00 |
| " From the rent of October, 1914............. | 300 00 |
| | $1,000 00 |

" In addition thereto you are to pay me $633.33, one-third of the $1,900.00 arrears; $250 for the trial in *Jacobson* v. *Jacobson*;

" $50.00 motion costs allowed by the Court;

" $44.31 disbursements allowed by the Court.

| | |
|---|---:|
| " You have collected up to September 1........ | $982 50 |
| " I have collected......................... | 880 00 |
| " making a total of...................... | $1,862 50 |

" You are therefore required to pay me, from the moneys in your hands, $497.31, inclusive of the $550 which you will have to pay from the collections of the September and October rents. I therefore respectfully ask you to pay the same to bearer, who is serving you with a certified copy of this order."

The order referred to is as follows:

" Ordered that the motion be and the same hereby is in all respects granted, except that Mr. Max Brown, the said attorney for the plaintiff herein and said receiver, Nathaniel Rosenberg, be and he hereby is allowed at this time a further sum of $200 on account of his fee for services rendered, with leave, however, to apply for the balance of said fee; and it is further

" Ordered that the receiver, Nathaniel Rosenberg, be and he hereby is directed to pay over to Max Brown, attorney for the receiver and the plaintiff herein, and to the plaintiff herein, the sums as prayed for in the moving papers herein."

The respondent contends that a reference to the papers

First Department, June, 1917.          [Vol. 178.

upon which the motion was " in all respects granted," with the exception noted in the order, establishes the complete truth of the statement of which the petitioner complained. The motion, as stated in the notice of motion, was " for an order fixing the amount of counsel fees and for the distribution of the moneys collected by the receiver and the attorney for the receiver." The respondent's affidavit read in support of the motion asked that his fee be fixed at $1,000, with directions as to the payment thereof.

Of the respondent's letter to the receiver, the court at Special Term said in an opinion on the motion for a substitution:

" It further appears that the respondent attorney, though the Court in granting the order entered on August 24, 1914, for the payment of $200 on account, specifically refuses to pass upon the question finally of the amount of compensation to which the respondent attorney would be entitled, falsely stated to his client, the receiver, in a letter which has been attached to one of the affidavits herein, that the court had allowed him compensation in the sum of $1,000."

Specification seventh charges the respondent with taking an appeal to the Court of Appeals in disregard of the following stipulation:

" An appeal having been taken herein by Max Brown, from an order made by Hon. Daniel F. Cohalan, dated the 17th day of June, 1915, and an order having been made on the 1st day of July, 1915, granting a stay of proceedings until the determination of that appeal, and said order having been subsequently modified by an order made on the 13th day of July, 1915, it is agreed, that the appellant will argue said appeal at the October, 1915, Term; that no appeal will be taken in the event of an adverse decision to appellant.

" Dated, NEW YORK, *July* 22d, 1915.

" M. BROWN,
          " *Attorney for Appellant.*
" HARRY A. GORDON,
          " *Attorney for Respondent.*"

This stipulation was entered into pursuant to an order granting a stay pending an appeal to this court, which stated:

" Upon the foregoing papers, this motion for a stay pending appeal is granted upon condition that the appellant, Max Brown, file a surety company bond in the sum of $1,500.00 within three days from date hereof, conditioned that if the order appealed from be affirmed he will without delay pay the amount named in the order appealed from, with all costs and disbursements incident thereto; that he will not appeal from the decision if adverse to him; that he will notice said appeal for and argue same at the October, 1915, term, and that he will pay ten dollars costs of this motion within three days after entry of this order.      J. W. G.,

            *"J. S. C."*

In spite of the above stipulation, an appeal was taken to the Court of Appeals from the order of affirmance of this court. A motion to dismiss such appeal on the ground that the appellant had stipulated not to appeal to the Court of Appeals was thereafter granted. The respondent contends that the stipulation was not binding on him, for the reason that it was signed by his son, and that on being informed of it he immediately repudiated the same. He further claims that the stipulation is invalid " for the reason that a party cannot stipulate away a right to appeal." The Court of Appeals has apparently adjudicated the question of its validity, and the respondent, having taken advantage of the stay, is not in a position to avoid the responsibility imposed by the stipulation.

In our opinion, the specifications of the charges above set forth have been fully sustained by the evidence. The report of the referee is disapproved as to such charges, and this court finds as matter of fact that they are sustained, and that the respondent has been guilty of gross misconduct in his profession, *first,* by making a false affidavit with intent to deceive the court; *second,* by improper collection of rents due to a receiver appointed by the court, by refusing and neglecting to pay over upon demand, and by converting a large part thereof to his own use; *third,* by making a false statement in his letter to the receiver that the court had made an allowance to him of $1,000; and, *fourth,* by violating a written stipulation. The conduct of which he is found

guilty is of such a nature as to demonstrate his unfitness to remain in the profession of the law, and he should be and hereby is disbarred.

LAUGHLIN, SCOTT, DOWLING and SMITH, JJ., concurred.

Respondent disbarred.   Order to be settled on notice.