THE STATE EX REL. CHARLES A MAPLE, TOM D. FORD, MURPHY DOOR BED COMPANY, H. W. FELTER, BENJAMIN F. ORR, ELLA ORR and MILDRED O. BEATON, Partners, Under Firm Name of STERLING FLOORING COMPANY, LASALLE IRON WORKS, THOMAS C. BRYANT, CITY COAL COMPANY, EDWIN C. ADAM, BIG BEND QUARRY COMPANY, CARR-TROMBLEY MANUFACTURING COMPANY, HUTTIG SASH & DOOR COMPANY, WILES-CHIPMAN LUMBER COMPANY, ADOLPH SIGOLOFF and JACOB SIGOLOFF, Partners, Under Firm Name of SIGOLOFF BROTHERS, B. O. GRAHAM, FRED B. SCHMIDT and DANIEL HOGAN, To Use of L. M. SMITH, Relators, v. JERRY MULLOY, Judge of Circuit Court of St. Louis County, and HENRY C. KIRCHNER, Receiver, Respondents.—15 S. W. (2d) 809.

Division One, March 9, 1929.

282

*Edward C. Crow* and *Jones, Hocker, Sullivan & Angert* for relators.

*Wurdeman, Stevens & Hoester* and *John H. Haley* for respondent.

ATWOOD, P. J.—This is a proceeding to prohibit respondents from executing an order made by respondent Mulloy, as Judge of the Circuit Court of St. Louis County, directing a sale of certain real estate in the case of Hogan Steele Construction Company et al. Upon the filing and presentation of relators' petition we issued our preliminary rule thereon which was served and to which respondents have made return. Thereupon relators filed motion to quash respondents' return and make the preliminary rule absolute.

From the uncontroverted allegations of relators' petition it appears that on July 24, 1924, Daniel Hogan brought an action in St. Louis County against J. M. Steele Construction Company and others to enforce an alleged mechanic's lien on certain premises in the County of St. Louis consisting of seven two-story brick flat and garage buildings, sheds, fences, sidewalks, appurtenances and

improvements situated on certain described lots. Various persons, corporations and unknown parties were made defendants to the action as lien claimants and claimants under deeds of trust. On July 26, 1926, Henry C. Kirchner, the other respondent herein, was by order of said circuit court appointed receiver of said property and was directed to take possession and collect the rents thereof. There were orders of publication in some instances and personal service in others. Answers, cross-bills and intervening petitions were filed, and defaults were entered as to those defendants who failed to appear. Replies were filed and the cause put at issue. The trial extended through several days of the January term, 1927, and the cause was continued to the May term, 1927. On July 11, 1927, at the May term of said court, a decree, in the caption and body of which respondent Henry C. Kirchner, Receiver for J. M. Steele Company, a corporation, is named as a party defendant, was entered, which, after finding this to be an equitable lien suit and determining and defining the rights, liens and priorities of the parties litigant, directed the receiver to "remain in charge of the property herein described, manage, control, conserve and preserve same in its present condition to the end that said property be protected for the rightful recipients of the proceeds thereof until such time as said mechanics' liens, interest and court costs are fully satisfied and discharged, or until said property is sold under the judgment rendered herein; and, in that event, said receiver shall turn over the possession of said property to the purchaser at such sale under such execution and file his final report and the receiver is discharged thereon." Said judgment and decree further provided "that the receiver pay out of the funds now in his hands, first, the necessary expenses of said receivership, including allowance to the receiver on account of his services heretofore rendered, his attorneys' fees and other expenses incurred by said receiver in the preservation of said property, and the court costs incurred in this case, and the balance, if any, to be held by this receiver pending further orders of this court." The judgment also provided the manner in which the proceeds of said sale should be marshaled and paid out, and further provided "that general and special execution issue in conformity with this decree and that the sheriff proceed to sell" said real estate and improvements in the manner therein stated. Motions for new trial were filed by some of the parties. Some of these motions were overruled at the May term, 1927, and the remainder were overruled at the September term, 1927. No appeal was taken. The claimants who are named as petitioners in caption hereof subsequently assigned their several liens as fixed by said decree to L. M. Smith, usee named in caption. On April 7, 1928, and during the January term, 1928, of said circuit court, the receiver filed his ap-

plication for an order directing a sale of the premises by him as receiver, "because of the nature and kind of the divers and numerous claims, liens, the unpaid costs and unliquidated obligations duly incurred herein, upon and covering the real estate in controversy, . . . And because of the nature and kind of said property, and upon the consideration of the entire record herein, it would be to the best interests of all concerned that said real estate be forthwith sold and converted into cash by said receiver." On April 30, 1928, and during the same term, this motion of the receiver was heard and sustained and it was thereupon "ordered by the court that said receiver forthwith make sale of the said real estate above described for cash in hand to the highest bidder at the east front door of the courthouse in the city of Clayton, St. Louis County, Missouri, between the hours of nine o'clock in the forenoon and five o'clock in the afternoon of a day of the regular May, 1928, term of this court, first giving at least twenty days' notice of the time, place, manner and terms of said sale and what real estate is to be sold and where situated, by advertisement in the Watchman-Advocate, a weekly newspaper of general circulation and printed and published in said County of St. Louis, Missouri, for one year and more next preceding this date; that the said seven two-story brick flats and garage buildings, sheds, fences, sidewalks, appurtenances and improvements and the land on which same are situated be sold separately; that out of the proceeds of said sale the said receiver shall first pay the costs of this suit, including the expenses of said receivership and the court costs in the original lien suits filed by the various lienors herein and the expenses of said sale; that out of the balance of said proceeds said receiver shall next pay to Seneca C. Taylor the sum of $1,210.93 and that said receiver charge said amount against and deduct the same from any part of said fund due or payable to Albert Wenzlick and S. H. Blair, respectively trustee and *cestui que trust;* that except as hereinbefore provided said receiver shall distribute the balance of said proceeds and pay same to the parties entitled thereto in pursuance of the terms of the original decree rendered herein on July 11, 1927. It is further ordered that the bond of said receiver be increased to the sum of $50,000. It is further ordered that any and all previous orders or decrees heretofore rendered herein inconsistent with this order be and the same are hereby set aside and vacated, and that this cause be continued until the next term of this court." Under said order said receiver proceeded to advertise said premises for sale for June 2, 1928.

From respondents' return, which relators merely move to quash, it appears that on October 16, 1925, J. M. Steele Construction Company, owner of the real estate in controversy, executed its deeds of trust to Edward Lasky, one of the parties to said cause in said

circuit court, conveying part of said real estate to secure certain promissory notes given to procure funds to erect the improvements on said real estate; that on October 21, 1925, Southern Surety Company executed and delivered to the said Lasky its bond in the sum of $11,000 to indemnify the said Lasky against mechanics' liens because of said improvements; that said Southern Surety Company executed three similar bonds in the sum of $6,000 each to the Continental Life Insurance Company, which also lent money with which to erect improvements on said property; that each of the lots here involved is subject to a first deed of trust securing an indebtedness of $11,000 owned by Albert Wenzlick, another party to said suit; that relator L. M. Smith, to whose use this action is maintained, is, and was at all of the times herein mentioned, the attorney and agent for the Southern Surety Company, and as such paid to the claimants the mechanics' liens adjudged as above stated in said circuit court, and has taken from such lien claimants assignments thereof and is holding the same for the use and benefit of said Southern Surety Company, the actual owner and holder thereof, and that none of said mechanics' lien judgments have been released; that at the time of and since the filing of the application by the receiver to sell said real estate there were and still are pending in the Circuit Court of St. Louis County divers suits wherein said receiver was, and still is, a party, involving the real estate in controversy and for the purpose of securing relief and satisfaction of the various liens therein involved, in some of which suits the said obligations of the Southern Surety Company are pleaded; and that the property here involved is of sufficient reasonable market value to pay off and discharge all of the liens against it including costs, none of which were paid, and the unpaid balance due on the receiver's certificate issued by order of said court. It further appears that notice and a copy of the receiver's application to sell the property was served on all parties interested, including said Southern Surety Company and said L. M. Smith; that on April 10, 1928, Smith in his own behalf and as attorney for the Southern Surety Company acknowledged receipt of notice and a copy of said motion, and appeared in person, participated in the hearing, and opposed said motion without interposing any plea to the jurisdiction of the court or perfecting an appeal from the court's order and judgment entered on April 30, 1928, as aforesaid.

Relators contend that the judgment of July 11, 1927, was a final judgment in the case of Hogan v. Steele Construction Company et al., with all the incidents that the expression implies; that respondent Mulloy had no power to modify it at a subsequent term either as to the rights of the parties litigant touching the disposition of the proceeds of the sale or by the substitution of a sale by the

receiver for a sale under execution by the sheriff; that the mechanics' lien statute of 1911 (Sec. 7244, R. S. 1919) provides for a sale only by the sheriff under a special *fieri facias* or by a special commissioner appointed for that purpose, and having by judgment and decree duly entered in the cause selected one of the alternative agencies provided by statute said respondent could not at a subsequent term set aside that judgment and enter a different judgment and direct the sale to be made by a person not authorized by the statute or by the original judgment. Respondents, on the other hand, say that the judgment of July 11, 1927, was not final with respect to the matters concerning which it was subsequently modified; that procedure under the equitable lien statute of 1911, is "governed by the law and rules of procedure in civil actions generally," and not by the old mechanics' lien statute, now Section 7231, Revised Statutes 1919, which provided that the execution be a special *fieri facias,* issued in conformity with the judgment, returnable as ordinary executions, and advertisement, sale and conveyance of real or personal estate thereunder made as under ordinary executions; and that relator Smith, assignee of all the mechanics' liens here represented, having appeared and participated in the hearing on the receiver's motion, was relegated to his remedy by appeal from the court's order and judgment entered thereon and he should not be permitted to substitute our writ of prohibition for his remedy by appeal.

Bearing in mind that this is a proceeding in equity, we shall first determine whether or not the judgment of July 11, 1927, was a final judgment. In Section 41 of Black on Judgments (2 Ed.), it said:

"In drawing the distinction between final and interlocutory adjudications, the greatest difficulty has been experienced in the case of decrees in equity, the confusion arising principally from the peculiar nature of these decisions and the wide range of means which chancery possesses both for informing the mind of the judge and for acting upon the parties concerned. . . . And the true rule seems to be, that if that which remains to be done or decided will require the action or consideration of the court before the rights involved in the cause can be fully and finally disposed of, the decree is interlocutory; but it is none the less final if, after settling the equities, it leaves a necessity for some further action or direction of the court in execution of the decree as it stands."

Section 44 of the same authority states that even though the decree after finding the general equities orders a reference to a master to do or ascertain something that is necessary to carry the decree into effect, if the functions of the master are to be merely ministerial and not judicial, or if all the consequential directions depending on the result of the proceedings before him are given in the decree it-

self, then the decree is final and not interlocutory. Note also Section 48, in part as follows:

"Upon a bill for the foreclosure of a mortgage, if the decree ascertains the validity of the mortgage and the amount of the debt, orders a sale of the mortgaged premises, describing them, for satisfaction of such debt, directs that the sum due on the mortgage with interest and costs be paid over to the mortgagee out of the proceeds of the sale, and adjudges that the defendant make good any deficiency which may be found to exist after the sale, then the decree is final and complete; for it leaves nothing to be adjudicated or reviewed by the court. But if the decree does not ascertain the amount due; or if it orders a sale but does not give any direction as to the disposition of the proceeds; or if it reserves the question of the distribution of the fund, in order to adjust conflicting claims or liens; or if, without ordering a sale, it directs the cause to stand continued for further order and decree upon the coming in of a master's report, then, and in any such case, it is merely interlocutory."

To the same effect are 2 R. C. L. 40, 41, secs. 22, 23; 3 C. J. 458, sec. 274; State ex rel. v. Riley, 219 Mo. 667, 691; Doe Run Lead Co. v. Maynard, 283 Mo. 646, 672; State ex rel. v. Klein, 140 Mo. 502, 510; Lewisburg Bank v. Sheffey, 140 U. S. 452; Keystone Iron Co. v. Martin, 132 U. S. 97; Winthrop Iron Co. v. Meeker, 109 U. S. 183.

Looking now to the judgment under consideration we find that it ascertained and determined the validity and amount of the respective liens, described and ordered a sale of the premises for the satisfaction thereof, directed that the lien indebtedness be paid out of the proceeds of said sale, specified the order and amounts in which said proceeds should be applied in the satisfaction of said liens, and directed the receiver to pay out of the funds in his hands the necessary expenses of the receivership and the court costs incurred in the case and hold the balance if any pending further orders of the court. True, the judgment further directed the receiver to remain in charge of the property, "manage, control, conserve and preserve same in its present condition to the end that said property be protected for the rightful recipients of the proceeds thereof until such time as said mechanics' liens, interest and court costs are fully satisfied and discharged, or until said property is sold under the judgment herein," but the jurisdiction thus expressly retained over the property was clearly for the sole purpose of making the equities already adjudged beneficially effective. The judgment even further provided that in event of sale the receiver should turn over possession of the property to the purchaser at such execution sale and file his final report and be discharged thereon. The decree pur-

ported to settle and determine all of the rights of the parties and left nothing to be adjudicated or reviewed by the court. Under the doctrine above stated, which is amply supported by the authorities, the judgment of July 11, 1927, was final, and any party to the suit who was dissatisfied might have appealed therefrom. Such was evidently the understanding of court and counsel at the time because several of the parties filed motions for a new trial, which were subsequently overruled, although no appeal was perfected. In Hydraulic Press Brick Co. v. Lane, 198 Mo. App. 438, 453, in a proceeding under the same equitable lien statute and on a similar record, the judgment was held to be final and one from which an appeal would lie.

If the judgment be final the great weight of authority in this State is that it cannot be amended, modified, set aside or vacated after the term, except as expressly authorized by statute. The doctrine was early expressed in Ashby v. Glasgow, 7 Mo. 320, as follows:

"When a final judgment is rendered in a cause, and that judgment is erroneous, it may, during the term at which it was rendered, be set aside, for during a term all the proceedings are in the breast of the court, and they may be altered or vacated as justice requires. But when the term is past, then the control of the court ceases, and no alteration or amendment can be made, but such as is authorized by the Statute of Jeofails and amendments. An error in the court, in rendering judgment, is not cured by the Statute of Jeofails; it can only be corrected by appeal, or writ of error." See also, Ross v. Ross, 83 Mo. 100, 102; State ex rel. v. Ross, 118 Mo. 23, 47; Hall v. Lane, 123 Mo. 633, 636.

And in Crawford v. Ry. Co., 171 Mo. 68, 74, 75, we said: "Thus, it is settled law in this State that during the whole of the term in which any judicial act is done, the proceedings are considered to continue *in fieri* and even after a judgment has been rendered the record remains in the breast of the judges of the court and is therefore subject to amendment or alteration as they may direct, but cannot be so amended after the lapse of the term further than by *nunc pro tunc* entries which make the record speak the exact truth of what did occur."

Section 2121, Revised Statutes 1909, was Section 795, Revised Statutes 1899, and provided that judgments in any court of record should not be set aside for irregularity, on motion, unless such motion be made within three years after the term at which such judgment was rendered. In Jeude v. Sims, 258 Mo. 26, 39, after citing these statutes, we said: "In all cases, except those provided for by these statutes, a court has no authority to disturb its judgment after the lapse of the term."

In this case it is not pretended that the motion filed or the court's order made thereon was for the purpose of setting aside or correcting any irregularity in the original judgment, or pursuant to any statutory authority to amend, modify, set aside or vacate judgments. Nor can it be successfully argued that after exhausting its jurisdiction by determining the equities between the parties, ordering sale of the property, directing distribution of the proceeds and entering final judgment, even a court of chancery could retain jurisdiction of the cause to amend, modify, set aside or vacate its judgment in whole or in part at a subsequent term. On this very point we thus ruled in St. Louis v. Crow, 171 Mo. 272, 280, 281:

"It is agreeable to the course of equity jurisprudence for the court, after it has pronounced judgment on the rights in litigation, to retain the bill for administrative purposes and to make orders to carry the decree into effect. But a court of equity has not, any more than a court of law, authority to pronounce a final judgment and then hold the case open for further adjudication on its merits." See, also, Ball v. Cotton Press Co., 141 Mo. App. 26, 49; Miller v. Connor, 177 Mo. App. 630, 636, 637; 3 C. J. 459, 514; 34 C. J. 232; 15 R. C. L. 691; Black on Judgments (2 Ed.) sec. 154.

However, counsel for respondents say: "The decree was not modified in any manner to affect the status of the adjudicated claims, the amounts and priorities remained the same—the modification affected only the method of sale." The court order in  question directed the receiver to make the sale instead of the sheriff who in the original judgment was directed to sell the property; it directed that payment of the costs of suit including expenses of the receivership and court costs in the original lien suits filed by the various lienors and the expenses of the sale be made out of the proceeds of the sale instead of out of the rent money in the receiver's hands, as ordered in the original judgment; and it directed that $1210.93 be paid to a person who was not a party to the suit and that the same be deducted from any part of the amount due and payable to certain parties to the suit whose rights were fully adjudicated in the original judgment. But even if the subsequent order had only affected the sale as prayed for in the receiver's motion and in the manner above stated, nevertheless, it has been held that "the modification of the judgment at a subsequent term changing terms of sale is not permissible." [35 C. J. 16, 17; McBride v. Hoffman, 13 Ky. 1020.] "A judgment or decree directing or authorizing a sale of land or of personal property is usually final and appealable." [3 C. J. 533.] It has also been held that a judgment directing the sheriff to sell mortgaged property for the satisfaction of a mortgage debt and defendant to pay any deficiency appearing after the sale, is not an

interlocutory but final judgment. [Morris v. Morange, 38 N. Y. 172.]

On the record presented and in the light of the authorities noted we are constrained to hold that the court order of April 30, 1928, made on hearing upon the receiver's application and motion was an attempt to amend the final judgment of the court made and entered in the same cause at a prior term, and to modify the same by setting aside and vacating parts thereof, that the court was without jurisdiction to make the order and it is, therefore, void. In so holding we are not unmindful of certain well reasoned exceptions to the general rule stated which are recognized in several jurisdictions, such as subsequent directions necessary to carry a judgment into effect but which do not change or modify the judgment with respect to matters put in issue and determined by the judgment (34 C. J. 235), and changes in the directory parts of a judgment looking to the mode of its execution. [15 R. C. L. 691, sec. 129.] Respondents undertake to bring the order within these exceptions and quote most of the footnote in Union Trust Co. v. Curtis (Ind.), L. R. A. 1915A, 696, citing instances where courts have modified the terms of judicial sales to obviate or overcome impediments to the execution of the judgment as originally entered, although no instance is given where the court went so far as to substitute a different person and officer of the court for the one designated in the original judgment to make the sale. In the Union Trust Company case the action was in the nature of a suit in equity to remove obstruction to the execution of the decree previously rendered. It was held that while such an action was not common a bill therefor would lie, it being remembered that "equity jurisprudence in its fullness is in force in this State (Indiana), except as curtailed by constitutional and statutory provisions." In the instant case the motion and order made thereon neither in terms nor by fair implication indicate any such purpose, and for that reason the case does not fall within the class of exceptions noted. Furthermore, as above suggested and as stated at the very beginning of the footnote from which counsel for respondents quote, the equity power here recognized is subject to the limitation of constitutional and statutory provisions, and our equitable lien act of 1911 (Sec. 7244, R. S. 1919) provides for the "sale and execution of deed for the property sold in such equitable action, either by special commissioner appointed to make said sale or by the sheriff or successor of such commissioner or sheriff." This language limits the subsequent provision that the procedure in such cases "shall be governed by the law and rules of procedure in civil actions generally," and yet this court order undertakes to substitute an agency to make the sale and

execute the deed that is evidently precluded by the terms and intent of the statute.

It remains for us to pass on respondents' contention that relators should not be permitted to substitute the remedy of prohibition for that of appeal. In 34 Corpus Juris, 251, it is said that the remedy for error in granting or denying a motion to amend a judgment is by exception and assignment of error on appeal. This was a "special order after final judgment in the cause," and therefore appealable. [Sec. 1469, R. S. 1919; Bussiere's Admr. v. Sayman, 257 Mo. 303, 313; State ex rel. v. Riley, 219 Mo. 667; and Arndt v. Arndt, 177 Mo. App. 420, 423.] However, in view of the condition of the property and the nature of the rights involved, the disposition of which has apparently already been too long delayed, it seems evident that the remedy by appeal is inadequate.

The preliminary rule heretofore issued is made absolute. All concur, except *Frank, J.,* not sitting.