THERESA R. BUCKNAM, Appellant-Respondent, v. ROBERT H. BUCK-NAM, Defendant, FRANCIS C. DOWNEY, Respondent-Appellant.—151 S. W. (2d) 1097.

Division Two, June 10, 1941.

*Homer A. Cope, Cope & Hadsell* and *Walter A. Raymond* for Theresa R. Buchnam.

*Hugh B. Downey* and *Maurice J. O'Sullivan* for Francis C. Downey; *J. Francis O'Sullivan* and *John M. P. Miller* of counsel.

BOHLING, C.—On March 14, 1934, Theresa R. Bucknam, plaintiff *nisi* and for convenience sometimes designated appellant here, obtained a divorce from Robert H. Bucknam, in Jackson County, Missouri. The decree awarded her the custody of their minor son, David Horton Bucknam, born February 19, 1933, $150 monthly alimony and $50 monthly maintenance for the son. She, experiencing difficulty in collecting the alimony and maintenance, in the latter part of 1934 employed Francis C. Downey, an attorney, movant *nisi* and for convenience so designated, to collect said alimony and maintenance. On June 10, 1939, a contract of settlement was effected between said Theresa and Robert H., Robert H. agreeing, among other things, to pay $10,000 to Theresa. Mr. Downey filed a motion seeking to charge the $10,000 with the payment of his fee. The court, on a *quantum meruit* basis, allocated to him $5,000 of said $10,000. Mrs. Bucknam contends Mr. Downey is not entitled to charge any fee against said $10,000. Mr. Downey contends for a charge of $8,281.04. Each has appealed from the judgment *nisi*.

Mr. and Mrs. Robert H. Bucknam were married February 12, 1929, in Massachusetts. Thereafter, Robert H. became the beneficiary of a spendthrift trust, administered in Boston, Massachusetts, created by his mother's will and, under its provisions, was to receive the corpus of the trust estate on December 20, 1939. He married a second wife soon after the divorce of March 14, 1934. We shall not detail the efforts of Mr. Downey to collect. From the record, his services continued until the consummation of the contract of June 10, 1939, and included investigations of the laws of Massachusetts, Connecticut, Florida and Missouri. Among other efforts, was an unsuccessful attempt to subject the spendthrift trust to the payment of Theresa's claims. [Bucknam v. Bucknam, 294 Mass. 214, 200 N. E. 918, 104 A. L. R. 774.] In 1938, Robert H. Bucknam and his second wife resided in Kansas City. On or about February 26, 1938, Mr. Downey caused a summons in garnishment to be served on the Plaza Bank of Commerce, of Kansas City, Missouri, and instituted proceedings seeking the modification of certain provisions of the original decree of divorce. On March 5, 1938, the original judgment was modified with respect to the $150 monthly alimony. The modification was, briefly, to the following effect: In lieu of the continuance of said periodical alimony, Theresa was awarded the gross sum of $40,000, and the same was decreed a lien against the corpus of said spendthrift trust estate *eo instante* upon the passing of the title from the trustees to Robert H. Robert H. was ordered to post a $50,000 bond to secure the payment of said alimony and forbidden and enjoined from

departing from Jackson County, Missouri, until further order of the court.

Thereafter, said Theresa and Robert H. undertook to adjust their financial differences by the contract of June 10, 1939, which, in so far as deemed material, we outline in brief. This contract was contingent upon Robert H. attaining the age of 30 years; that is, being alive on December 20, 1939, and receiving the corpus of the aforementioned trust estate. Upon the performance of the covenants thereof by Robert H., Theresa, among other things, was to satisfy of record the judgments for alimony and maintenance. Robert H. agreed to pay Theresa $10,000 on or before December 20, 1939, and she was to receive $1,270.09 of certain moneys on deposit with the Plaza Bank of Commerce, and Robert II. was to establish a $15,000 trust estate for the use and benefit of their son David Horton Bucknam, the material details of which are more fully stated hereinafter.

The contract explicitly provided, in part: "8. Said Theresa may, if she shall so desire, after making payment of her counsel fees and other legal expenses from and out of the sum of Ten Thousand ($10,000) Dollars, to her to be paid by said Robert as hereinabove provided, pay over to the Trustees of the David Horton Bucknam trust" any portion of said $10,000 remaining in her hands; and as we read paragraph "17" thereof, she released Robert H. from any possible liability for said fee.

On November 22, 1939, the same being the ninth day of the November, 1939, term of court, the Circuit Court of Jackson County upon findings that said contract of June 10, 1939, was voluntarily and legally entered into and executed by the parties thereto; that appellant had received the $1,270.09 mentioned in said contract; and that said contract was fair and just, entered an order approving said contract, ordered that the judgment of $50 monthly for the maintenance of David Horton Bucknam be vacated, set aside and for naught held upon the establishment of the $15,000 David Horton Bucknam trust; ordered that Robert H. stand discharged of all obligations to Theresa for alimony and that Theresa satisfy of record the judgments theretofore entered awarding periodical and gross alimony "upon the payment to the plaintiff, or payment into this court for the benefit of plaintiff" of $10,000, the court retaining jurisdiction to make such additional orders and decrees as might be necessary to effectuate said contract of June 10, 1939.

As indicated, Robert H. Bucknam was not entitled to receive the corpus of the trust estate established by his mother until December 20, 1939. Thereafter, on January 12, 1940, the same being the fifth day of the January, 1940, term, the court, upon findings that said Robert H. had fully performed his covenants of the contract of June 10, 1939, and upon the further explicit finding "that the parties to this cause have agreed and consented to this order," ordered that

the orders contingent upon Robert H.'s performance in the order of November 22, 1939, be effectuated and also explicitly provided: "It is further ordered, adjudged and decreed that the clerk of this court shall retain in his possession the said sum of 'Ten Thousand Dollars ($10,000), heretofore deposited with him by the defendant for and on behalf of the plaintiff, until the further orders of this court." On said January 12, 1940, the prior orders, judgments and decrees were satisfied of record on behalf of appellant. On January 16, 1940, Mr. Downey filed his original motion, an amendment thereof being under review here.

Mrs. Bucknam asserts that the final decree for alimony was entered in the November, 1939, term of the Jackson County Circuit Court; that Mr. Downey's motion was not filed until the January, 1940, term of said court, and, therefore, the court was without jurisdiction to entertain said motion.

■ The $10,000 was *in custodia legis* when the order of the January, 1940, term was entered. Said order explicitly recited that the original litigants agreed and consented to its provisions, which included the provision that the clerk of the court retain said $10,000 subject to the further orders of the court. The contract of June 10, 1939, contemplated the payment of movant's fee out of the $10,000 to be received by appellant. She accepted, did not repudiate, performance of the contract in accord with said order of November 22, 1939, and does not question the propriety of the deposit of said $10,000 in court or that portion of said order authorizing said deposit. Judgment debtors may protect their rights to a proper satisfaction of record by placing the money *in custodia legis* and shift from themselves to the law and the court the responsibility of determining the rights of interested parties in and to the fund. [Lawson v. Missouri & Kansas Tel. Co., 178 Mo. App. 124, 136, 164 S. W. 138, 143[11]; Noell v. Missouri Pac. Rd. Co., 335 Mo. 687, 700[5], 74 S. W. (2d) 7, 12[11].] The court, having custody of the $10,000, had jurisdiction to distribute it among those properly entitled to be heard thereon. [See 18 C. J. 774, X; Southern Coal Co. v. Shepard, 223 Mo. App. 112, 113, 9 S. W. (2d) 257[2]; Rolla State Bank v. Borgfeld, 93 Mo. App. 62, 69[1, 2]; United States v. Lufcy, 329 Mo. 1224, 1236, 49 S. W. (2d) 8, 14[7, 8].] The phase of the case under discussion does not pivot necessarily upon an unauthorized award for the professional services of an attorney in obtaining a divorce at a term subsequent to that in which alimony in gross was allowed and appellant's authorities (see Marshall v. Marshall (Mo. App.), 236 S. W. 378[2]; Beckler v. Beckler, 227 Mo. App. 761, 765, 57 S. W. (2d) 687, 689; State ex rel. Maple v. Mulloy, 322 Mo. 281, 288, 15 S. W. (2d) 809, 812[1, 2]) are not controlling.

■ Appellant directs our attention to authorities recognizing the State's interest in divorce proceedings (State ex rel. v. Hostetter,

344 Mo. 770, 775[3, 4], 129 S. W. (2d) 1, 4[5, 9]), recognizing that the wife is not to be overreached in property settlement contracts between spouses (North v. North, 339 Mo. 1226, 1235[6], 100 S. W. (2d) 582, 587[10]); holding against public policy contingent fee contracts for procuring divorces or awards of alimony (5 Am. Jur., p. 361, sec. 166; 30 A. L. R. 189; 17 C. J. S., p. 618, sec. 235); and contends that alimony and support money for minor children awarded under Sec. 1519, R. S. 1939, Mo. Stat. Ann., p. 1564, sec. 1355, may not be impressed with a charge for attorney's fees (Hilleary v. Hilleary, 189 Mo. App. 704, 708, 175 S. W. 282, 283; Sanner v. Sanner (Mo. App.), 46 S. W. (2d) 936, 937 [1, 2]; Dougherty v. Burger, 234 N. Y. Supp. 274, 275; In re Brown, 165 N. Y. Supp. 736, 742[3]).

Whether we are materially concerned with any contingent fee contract remains to be developed. The issue for the present is limited to the propriety of the charge, on a *quantum meruit* basis, for movant's professional services against the $10,000 deposited in court. The contract of June 10, 1939, contemplated the full and final adjustment of Robert H.'s obligations to appellant and their minor son, including any possible responsibility on his part for movant's fee. [See paragraph 8 of the contract, mentioned supra.] The parties so understood its provisions. The court approved it on November 22, 1939. Said contract, according to the litigants, must be considered either as discharging Robert H.'s obligations under Sec. 1519, supra, for alimony and maintenance to Theresa and for maintenance of their son, or as constituting a valid settlement of property rights between said Robert H. and Theresa. In either event the contracting parties contemplated movant would receive his compensation out of the $10,000 therein mentioned, and said provisions of the contract received the sanction and approval of the court along with the rest of the document.

If the $10,000 be viewed as an approved allowance to a divorced wife under Sec. 1519, supra, said allowance differed from the usual allowances of alimony in that by agreement between the former wife and husband it was subject to the payment of the attorney's fee. Such a contract, if approved by the court, permits of the court exercising a sound discretion, fully protecting the public's interest; does not infringe upon the legal obligation of a husband to maintain his wife; and legally does not subject an award to the wife for alimony and maintenance to an unauthorized charge for attorney's fee. "An attorney is entitled to a lien on the alimony secured by him for his client in a divorce proceeding but only to the extent of his fees and costs taxed and included in the allowance of alimony. He cannot enforce any lien against the remainder of the allowance, either for special fees in that case or otherwise." [3 Am. & Eng. Ency. of Law (2 Ed.), p. 456, par. d; quoted in Hilleary v. Hilleary, supra. Con-

sult 7 C. J. S., p. 1173, nn. 23, 24; 6 C. J., p. 779, sec. 388.] The first sentence of the quotation is in accord with the logic underlying State ex rel. v. Hostetter (Banc), supra. In the instant case we should not overlook that the divorce was *fait accompli* and appellant was a *femme sole* when she employed movant and the transactions here involved occurred. The point is ruled in favor of movant.

■ Under date of March 2, 1938, appellant wrote movant stating she understood and would abide their agreement with respect to his fee and: "Your fee shall be 20% of all sums collected in the course of the proceedings up to $15,000, of whatever is received over and above that amount you take 50%." Movant asserts error in that the allowance should have been $8,281.04 (after crediting $254 paid) in accord with his client's contract. The court's award of $5,000, after having the cause under advisement, was not on special *assumpsit* but under *indebitatus assumpsit* as for a *quantum meruit* of compensation. In the course of his printed argument movant states his motion was for specific enforcement of appellant's agreement of March 2, 1938. The motion is not analyzed and authorities are not cited to the statement. Movant has the burden upon appeal with respect to this error, if error. Trial courts should not be convicted of error upon mere dogmatic assertions. The motion was in one count. [Consult Globe Light & H. Co. v. Doud, 47 Mo. App. 439, 445; Phillippi v. McLean, 5 Mo. App. 586(6); Phillips v. Geiser Mfg. Co., 129 Mo. App. 396, 402, 107 S. W. 471, 473.] It covered nine pages of the abstract of record. It set out the contract. It also stated the services performed by movant and their results. It prayed the court to declare the rights of appellant and movant under the contract of March 2, 1938, in and to said $10,000 deposit and for the specific enforcement of the same as so construed. It also prayed the court to determine the just compensation due movant, decree the same to be attorney's fee and suit money properly payable to movant, and decree a lien therefor against said $10,000 deposit. Suppose, we need not determine whether correctly or not, the court construed said motion as sounding in *quantum meruit* or considered said deposit a payment under Sec. 1519, supra, subject to a reasonable final allowance therefrom to movant uncontrolled by any agreement with his client. In either event, if erroneous, movant's assertion does not call for our development and discussion of the motion.

■ Appellant contends the allowance of $5,000 on a *quantum meruit* basis is excessive and, in her opinion, should be reduced to $2,000 on the theory movant is limited to 20% of the $10,000 directly received by her. Movant says the $5,000 allowance is inadequate by $3,281.04. That this court may determine the issue *de novo* is not questioned. [Robertson v. Manufacturing Lumbermen's Underwriters, 346 Mo. 1103, 145 S. W. (2d) 134, 138[4-6].] Movant's fee is not to be measured solely by the $10,000 deposit. Robert H. Bucknam paid

$1,270.09, deposited $10,000 in court, established a $15,000 trust fund for their son, and released all interest therein except a right to $7,500 of the trust estate in the event of the son's death prior to attaining 21. Appellant admittedly understood movant's fee was to be based on "all sums collected in the cause." She, broadly, is to receive the income from the trust estate for the benefit of David H. until he becomes 21 and the income is then payable to him until he becomes 30, when he is to receive the corpus of the trust estate. David H. was approximately 7 when the trust estate was established. Appellant has a sort of veto power over any disposition of the corpus of the trust estate; and she is to receive all in excess of $7,500 of said estate in the event of David H.'s death prior to his attaining 21 years, and the whole thereof in the event of his death between 21 and 30. Approximately four and one-half years passed before the collection was effected. Movant's recourse to the writ of *ne exeat* undoubtedly had its effect. The testimony was that movant's services were worth $10,000. Movant also made offers to show between $7,500 and $10,000 was reasonable. The testimony was advisory and helpful but not necessarily binding on the court. [Robertson v. Manufacturing Lumbermen's Underwriters (Mo.), supra [5].] We think the $5000 award somewhat conservative. While not inclined to view the agreed compensation as over liberal (American Surety Co. v. Fruin-Bambrick Cons. Co., 182 Mo. App. 667, 674, 166 S. W. 333, 335), we direct an allowance of $6750 to movant, giving some deference to the action of the court *nisi*.

The judgment is reversed, to be modified accordingly. *Cooley* and *Westhues*, CC., concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.